JNO. DUNLOP'S SONS, INC., Respondent, *v.* JOHN D. DUNLOP and BEVERIDGE C. DUNLOP, Appellants.*

First Department, April 5, 1940.

*Horace S. Manges* of counsel [*Gabriel Kaslow* and *James H. Mathias* with him on the brief; *Weil, Gotshal & Manges*, attorneys], for the appellants.

*Eugene M. Parter* of counsel [*Emil Weitzner* with him on the brief; *Kaufman & Weitzner*, attorneys], for the respondent.

* Revg. 172 Misc. 66.

Townley, J.   The complaint alleges that the defendants Dunlop, while officers and directors of the plaintiff corporation, conspired to defraud the corporation; that, pursuant to such a conspiracy, John Dunlop, in December, 1930, entered into a contract with the Irving Trust Company, as trustee in bankruptcy, to purchase for $80,000 a certain plant in Olyphant, Pa., to be used by the plaintiff corporation for processing silk.   In June, 1931, the defendants, in violation of their duty of confidence and trust as officers and directors of the plaintiff corporation, sold this plant to the plaintiff corporation, as a result of which sale the defendants derived secret " profits."   The complaint then continues:

" X. The price which the defendant John D. Dunlop paid to the Trustee in Bankruptcy of Amalgamated Silk Corporation was substantially less than the amount agreed to be paid and subsequently paid by the plaintiff corporation for the Plant.   The difference between the cost of the Plant to the defendant John D. Dunlop and the amount paid therefor by the plaintiff corporation exceeds fifteen thousand ($15,000) Dollars and constitutes secret profits derived by the defendants in violation of their positions of confidence and trust.

" XI. The said secret profits were paid by the plaintiff corporation to or for the benefit of the defendants John D. Dunlop and Beveridge C. Dunlop and were not disclosed to the plaintiff corporation and were secretly and fraudulently received by said defendants in violation of their trust duties as officers and directors of the plaintiff corporation."

The prayer for relief is:

" 1. That the defendants account to the plaintiff for the profits derived by them or either of them upon the purchase of the Plant and the re-sale thereof to the plaintiff.

" 2. That the defendants be required jointly and severally to repay to the plaintiff the aggregate amount of all profits received by them or either of them by reason of their wrongful, improper and unlawful acts, as aforesaid.

" 3. That the defendants account to the plaintiff, and the plaintiff recover from the defendants all losses and damages sustained by the plaintiff by reason of the wrongful, improper and unlawful acts of the defendants or either of them, together with costs."

It appears from the affidavits in the record that the books of the corporation showed on June 12, 1931, that the sum of $95,500 had been paid for this plant.   They did not show at that time that John D. Dunlop had paid $80,500 for the plant nor any other figures regarding this matter.   However, between January and April, 1932, an audit was made by independent accountants and

the transaction was treated by the accountants as a debt. Entries were made in the general ledger of the corporation in January, 1932, charging the Dunlops with the payment of $15,500. There was a journal entry made by the accountants in April, 1932, showing that John D. Dunlop had purchased the property at a receiver's sale for $80,000 and sold the same to the corporation for $95,000. At this time the corporation was still controlled by the Dunlops and these entries must be taken to be their acknowledgment in their own books of a debt.

This action was commenced February 27, 1939, more than six years after the overpayment to the defendants and more than six years after these entries in the books already adverted to. It seems obvious that an action at law lay for money had and received forthwith and that the legal remedy was complete. Special Term, however, has ruled that under *Potter* v. *Walker* (276 N. Y. 15) the ten-year Statute of Limitations applies on the theory that what is being demanded here is an accounting for " profits."

What we have in this case is a claim for the return to the corporation of a loss suffered by the corporation. The amount of the loss is the same as the amount of the so-called " profit " received by the defaulting officers and directors. The wrong done to the company is no different from the wrong done to a corporation when an excess salary is paid to an officer or when gifts are made to strangers or when bonuses are wrongfully paid. The exact amount of the loss is known. Though the pleader may call this loss to the corporation a " profit " to the unfaithful fiduciary which ought to be " accounted for," the pleader's characterization of the resulting legal situation with the intention of producing the application of a particular Statute of Limitations is not binding in any way on the court. The wrong pleaded is not a claim for profits in the sense in which that term is properly used in stockholders' actions.

Where bonuses are wrongfully paid, the six-year Statute of Limitations is to be applied. (*Cwerdinski* v. *Bent*, 281 N. Y. 782.) This court has held that the six-year statute applies also to payments of excess salaries and to the sale of stock by directors to the corporation at prices in excess of the market value. (*Davis* v. *Cohn*, 256 App. Div. 905.) We cannot distinguish the sale of stock by directors at a price in excess of the market value from the sale of a factory to a corporation under similar conditions.

The prayer for relief for an accounting for profits is not supported by any of the facts pleaded in the complaint. The six-year statute undoubtedly applies and the action is, therefore, barred.

The order should be reversed, with twenty dollars costs and disbursements, and the motion granted.

MARTIN, P. J., DORE, COHN and CALLAHAN, JJ., concur.

Order unanimously reversed, with twenty dollars costs and disbursements, and motion granted.